Next case please. Case number 10-1631, People v. Albert, Cleveland. Good morning, Your Honors, and may it please the Court, I am Assistant Appellate Defender Rachel Moran on behalf of Albert Cleveland. May it please the Chief Minister for rebuttal? Yes. Thank you. Sixteen years ago, Mr. Cleveland was convicted of first-degree murder based on the testimony of a single witness whose description of the shooting contradicted the medical examiner's testimony about how the victim was shot. Fourteen years ago, Mr. Cleveland was shot twice, and the only contradiction, as far as I can see, is the contact between the hand and the wound. I would disagree, Your Honor. What about the chest? The front chest. I thought there was no evidence of close-range firing. That's true, and that's one of the contradictions, that the medical examiner testified that it was within an inch of the shot, and the witness did not describe that at all. I should have asked you, what contradiction are you referring to? I'm referring to the fact that the medical examiner testified that he was shot in the front chest, and Shiroko Allen, the single eyewitness of the state, testified that the victim was fleeing into the alley as he was being shot. But she testified that she couldn't see the victim, the deceased, once he entered the gangway, and therefore didn't see the bullet strike the victim, so I don't see where that contradiction is. Was it not possible that he could have been shot in the hand subsequently after he entered the alley and got closer, after the first shot? It's a possibility, Your Honor, but this is not a reasonable doubt claim. The point is simply that the evidence is certainly not as overwhelming as the state suggests. Except when you refer to the single witness, it's a single witness of a different nature than a stranger. This is a single witness that was very familiar with the defendant and didn't have to actually identify the events as much as identify him being present and seeing what actually transpired between the defendants. Your Honor, we would not dispute that Shiroko Allen claimed to have known Mr. Cleveland from the neighborhood for two to three years. So let's get to the crux of the case. It's a PC, second stage, you believe you're entitled to a third stage evidentiary hearing, and on all three or just one claim? Your Honor, on the first claim, we believe Mr. Cleveland is entitled to a reversal of his conviction and a new trial. On the second and third claims, he is entitled to an evidentiary hearing. As to the per se conflict... Well, is there any point to an evidentiary hearing on the second and third if he's entitled to relief on the first? Certainly not, no, Your Honor. Okay, well then let's start with the first. I would love to, Your Honor. There's no dispute. Why do you think this is like Hernandez? Your Honor, it's like Hernandez because like the attorney in Hernandez, the attorney in Hernandez had previously represented the defendant's alleged victim at a time well prior, five years in Hernandez, seven years in this case, although there's evidence to suggest that there certainly may have been a more extensive relationship in this case. Hernandez came out of an evidentiary hearing, didn't it? Yes, it did, Your Honor. And in the course of the evidentiary hearing, defense counsel testified that he believed he continued to represent the individual that posed or created or gave rise to the conflict of interest. That's true, Your Honor. Can that occur in this case? No, there was no evidentiary hearing. More basic question. Can such a relationship continue to exist between defense counsel and the individual he previously represented? Of course not, Your Honor, but it is true. So why isn't this case more like Mikan's? Your Honor, it's not like Mikan's for several reasons. First of all, Mikan specifically stated that that case was presented both in the briefs and argued on the assumption that a showing of deficient representation would be required. That's not the case here, and that's not how Illinois treats per se conflicts. The other reason it's not like... Isn't that the real basic question here? Is this a per se conflict? Your Honor, if I can point this court to Hernandez and the holding in Hernandez... We know Hernandez. We know Hernandez. And there's language in Hernandez, and you quote it extensively and properly and correctly and persuasively. But the question is, is this... Can we... Who decides when a per se conflict exists? Do we decide it as a matter of law or do we decide it as a matter of the facts? It's a matter of law, Your Honor. If there's a deuce during the course of the evidentiary hearing, then the law comes into play. Because don't forget, in Hernandez, Justice Berg made clear that she relied on Attorney De Leon's statement that he continued. He believed he had an existing and continuing relationship that if this individual had been caught on the bail forfeiture warrant, he would be there and represent him in court on that warrant. Your Honor, she did say that, and that is one of the facts Justice Berg discusses. But she does not limit her holding to that. And it's impossible to square... So my point is that aren't the facts part of the process to arrive at a decision whether or not a per se conflict exists? Your Honor, they're certainly part of the process. Yes, I would agree with that. But the Illinois Supreme Court could have chosen to limit... So then it can't be just a matter of law? The decision as to whether a per se conflict exists is a matter of law. In one of the situations where the court has held it does exist, with no equivocation, is when the defendant has a prior association... When the defendant's attorney has a prior association with the defendant's alleged victim. Why does that prior association make a difference? Well, it could for a number of reasons. Give us one. Give us one, did you say? Sure, Your Honor. Your Honor, the attorney could have learned facts about Magellan's steward, the victim in this case, that could have been relevant to this case. It's possible that he knew who Magellan's steward's enemies were. It's possible that he knew what other criminal activity Magellan's steward was that could have... You're suggesting that this attorney was some sort of possible witness for the defendant. No, I'm not, Your Honor. Why would that make any difference? Because I thought Hernandez said that the defendant is entitled to an unfettered defense, an undivided loyalty by defense counsel, and it identified reasons why that undivided loyalty might not exist when there is a continuous relationship by defense counsel in a conflict situation. That undivided loyalty could still not exist. The attorney-of-client privilege extends beyond the grave, and so he could have learned facts about them. He could have simply...  If he had known information about Magellan's steward, such as other possible suspects, other people, maybe he knew about Magellan's steward's relationship with Albert Cleveland. That's very unclear from the record. So maybe an evidentiary hearing is necessary to flush out those facts. No, Your Honor. That's why the court protects the per se conflict rule in the Supreme Court. But can we say that this is a per se conflict based solely on the facts that are already undisputed? I think this court is required to say that this is a per se conflict. In your best cases? People versus Hernandez, Your Honor. Does Hernandez say that? I mean, there's language there, but the facts of Hernandez don't say that. And, you know, common law is extended not based solely on law, but on the similar facts being treated in a similar fashion, and we have to have similar facts here. But we don't have similar facts here. We don't have a defense counsel who testified that if this individual had been arrested and brought to court, I would be there standing alongside of him, representing him, and to the extent that he's saying that, then his loyalty is divided between that individual and the loyalty he owes to the defendant. So, counsel, you see no merit to the idea that it was seven years since Dickinson had represented? There's no merit to that, Your Honor, because the court in Hernandez, the state raised that very point, that it had been five years since the attorney in Hernandez had represented or had any interaction whatsoever with his previous client. And the court said that we have not required representation of the victim to be active. We declined to impose an active requirement. The operative word there is active. Your Honor, another operative word would be prior or contemporaneous. Well, then we should try to resolve which is the more operative word, which is the controlling word. It certainly isn't prior because everybody has a prior relationship. There's no other way you can have it. Your Honor, there's no other way. But active is, and that's when she cites his statement that if this individual is arrested on the bail forfeiture warrant, I will be standing next to him. Your Honor, another governing word would be the word whenever. The court said the per se conflict rule applies whenever. Is that like the definition of is, is, or are we going to go through every single word? I mean, they can't all be identical words. They can't all have the deciding meaning to it. They can't all give deciding meaning to a sentence. They all mean essentially the same thing, Your Honor. Whenever, prior, active, they don't require active representation. They do find that prior representation is a conflict. They find that it applies whenever the representation happened. And to Your Honor's point that everyone has a prior relationship. Give us a case where a per se conflict was ruled to exist under facts similar to ours. Your Honor, there are no on-point cases in Illinois in a case involving a dead victim. We would certainly acknowledge that and have done that. Counsel, what about the significance that this was only a preliminary hearing that Dickinson was involved in? I mean, that's a de minimis relationship to the victim. Your Honor, what we have here is we do have transcripts from a preliminary hearing. We also have records there he has represented co-defendants of Magellan Steward in at least one other case. And we have an affidavit that those co-defendants were, in fact, Magellan Steward's family. So we not only have an undisputed prior representation in a preliminary hearing, and perhaps further, although we acknowledge that there's not proof of that, but we also have proof that must be taken as true at second stage that he also represented family members of Magellan Steward. And in Hernandez, although he did discuss... Do we know they're really brothers? We only have that from an affidavit, which must be taken as true at this stage in the proceedings. The affidavit that he believes, the affiant believes that they're brothers, but do we have to take it that they are brothers as true? No. We have to take it that he believes that they are brothers, but we also do have to take that they are co-defendants. There is some involvement here. Would that be one of the issues that would need to be resolved at an evidentiary hearing? If the court decides only on the basis that there is additional suggestion or evidence of other relationship, yes, that that would need an evidentiary hearing. Wasn't there a question as well as to whether or not this was the same individual because of the misspelling of the first name? No, Your Honor. The state doesn't contest that. And they do have IR records. This is the same individual. He has the same IR number. And we even have a Chicago Police Department rap sheet saying Magellan Steward, a.k.a. Magella. So I don't think there's any legitimate question that this is... Counsel, you're going into your rebuttal time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Judy DeAngelis. I'm an Assistant State's Attorney representing the people of the state of Illinois. Ms. DeAngelis, speak up. Sirens on the streets. Sorry, sorry. I will. Your Honors, I have to say that the people completely agree with Justice Garcia's position. Well, I haven't said anything yet. I mean, I haven't taken a position yet. And we would say that certainly we don't believe that an evidentiary hearing is even required here. As this Court has pointed out, this is not Hernandez. This would be an unwarranted expansion of Hernandez. Well, it would be an expansion of Hernandez if we could say, as a matter of law, or we could rely on Hernandez to rule here if we could say that, as a matter of law, no per se conflict exists. But if we say we don't know whether a per se conflict exists, the only way to resolve that question is by way of an evidentiary hearing. Why isn't that the correct path to take? Your Honor, we do not believe an evidentiary hearing is required here. And the fact that, as you have discussed with Hernandez, Hernandez dealt with a victim who was alive. Let's say there's a range of cases where an evidentiary hearing is warranted on a per se conflict claim. And Hernandez is at the extreme. Well, for Hernandez, it has an evidentiary hearing. So Hernandez doesn't even fall into that. Because Hernandez, there was an evidentiary hearing. The circuit court judge said, you know what, you're entitled to an evidentiary hearing. So why shouldn't we, as a court of review, say, you know what, this case is close enough that an evidentiary hearing is warranted. We don't know what's going to happen. We don't know whether the court is going to say this is a per se conflict. Perhaps the court will say it's not a per se conflict. And in Hernandez, both the circuit, the appellate court in a two to one decision said there was no per se conflict. The Supreme Court said, you got it wrong. So why should we risk being wrong? Why shouldn't we just send it back to the circuit court and say, do an evidentiary hearing? Your Honors, we don't believe that an evidentiary hearing is warranted on these facts. Certainly an evidentiary hearing would be the easy way. Would we need only those facts that were in Hernandez for your office to say an evidentiary hearing is warranted? Or maybe even in Hernandez, your office probably said no evidentiary hearing is warranted, but the trial judge says I'm giving you one. Your Honor, we would look at the fact that, as defense counsel pointed out, there isn't one case in this state, nor is there one case in the entire country that says that there is even any type of conflict of interest when a defense attorney has represented a defendant and also represented the victim, and the victim is dead. Then let's go on to the second claim, the alibi witnesses. If we order an evidentiary hearing, shouldn't we say we think the trial judge should entertain all the alibi witnesses? We should entertain that claim, that the defense counsel was ineffective because he didn't pursue the alibi defense. Your Honor, again, we believe that defendant is not entitled to an evidentiary hearing on that issue either. He has not made a substantial showing of ineffective assistance of counsel, and clearly, based on the affidavits that have been presented to this court, it was either trial strategy for the defense attorney, who the affidavits admitted that they all spoke with the defense attorney, and he strategically chose not to present that. Explain that to me. Explain to me why a defense counsel would say in a jury trial that you don't need an alibi defense. You just need to stand there quietly and not present any evidence. How is that trial strategy? Well, first of all, if you look at the affidavits of Willenica Wheaton, and as we pointed out in our brief, Ms. Wheaton signed her name, spelled her name two different ways in the two different affidavits. Ms. Wheaton stated that she was with the defendant on the night of the murder. Maybe that's why we need an evidentiary hearing. Again, those affidavits themselves contradict the record. There is no record regarding alibi witnesses. There is not. That's the point, that the alibi witnesses were not called in order to make the record. Well, again, the trial court found that they were insufficient to warrant a hearing. He found that it was either trial strategy. If the defendant was with Ms. Wheaton during the relevant time period, how could that not have been an error? Your Honor, that's an assumption that's being made that he was, and Willenica Wheaton said in her affidavit. That's her affidavit. The affidavit that was submitted to the post-conviction court said that she was with him at 1130 the night of the murder. And then she submitted a subsequent affidavit to clarify. That was not accepted. Excuse me, it was not accepted by the trial court. And that's the other question we have. Why was it not accepted? Why does the trial court have that sort of authority to strike an affidavit that seeks to clarify a prior affidavit that is before the court? If it's meant to be pleadings, it's like saying, I'm not going to let you amend your pleading. Why shouldn't you? You haven't ruled on it yet. Why shouldn't the court? Why isn't that an abuse of discretion at least? Because the court is trying to keep something out that makes it more difficult for the court to rule. In fact, he's ruling already. He's saying, no, I believe your first affidavit. I don't believe the second affidavit. Your Honor, certainly as the Post-Conviction Act states, the trial court had the right to manage its docket. And this case went on and on and on for years. You can't manage a docket by telling a defendant, I'm not going to accept any more exhibits from you. I'm not going to accept any more amended petitions from you. I'm not going to allow you to add stuff. I mean, I don't know that that's a control of the docket. Well, Your Honor, argument had already been set, and defense attorneys were trying to file affidavits up to three days prior to argument being set, and even after argument was set. At one point, the state had the right to file their motion to dismiss and to respond to the allegations that were being made. And these filings were years and years and years later. As the record shows, it was ten years or so after the original petition. So long as there's been no ruling by anyone, cases remain pending for a long, long time, unfortunately. But so long as the case hasn't been resolved, we can make advances. Excuse me. The legislature has deemed it appropriate for a trial court to be able to manage its docket. What provision of the Post-Conviction Hearing Act are you referring to? 5-122-5. And what does it say that you believe permits the judge to control the pleadings that can be filed in a post-conviction proceeding? It states specifically that it allows him to determine whether or not pleadings are allowed to be filed. Can you read the language for me? Just give me the state one more time. 725 ILCS 5-122-5. And it's been interpreted in People v. King, 192 Will 2nd, 189. And that's for a first-stage proceeding as well as a second-stage proceeding? Yes, it is. It's under the Post-Conviction Act. It is. Oh, no, I understand that. But has it been interpreted that the judge has that sort of authority under both a first-stage proceeding as well as a second-stage? Yes, it is my understanding that yes, it has been. To do what? To be allowed to determine whether or not pleadings are sufficient as in the third argument, if we can discuss that concerning the defendant's right to testify also, the trial court said that that amendment also did not relate back to the common core. And in his original petition, he never claimed that he was denied the right to testify, and then ten years later he decided to have that put in his amended petition. You're right in terms of maybe there is such a provision because it just came to mind, People v. Brown, where the question was whether the trial judge mistakenly ignored an amended petition that was received within two days of the filing of the original petition, and it was never brought to his attention. And this court, Justice South, ruled that that was an abuse of discretion, and then we had that similar situation come up, and we said once again that that was an abuse of discretion. So there may exist a provision that allows the court to exercise that discretion, but that discretion... We don't believe it's an abuse here is our position. There are a couple of things I just wanted to point out. As this court is aware, there is no affidavit that was submitted by the defense attorney, so rather than having this case reversed, as the defendant would request, if this court were to not agree with the people's position in their brief and their argument today, at the very least we would ask for an evidentiary hearing. And one other point where the eyewitness defense counsel had said that it contradicted the medical examiner's testimony, and we would state that it did not. She saw that Amos was shot in the face, and in fact the medical examiner did say that he was shot in the face. One other point, the two victims were in fact brothers, and it's certainly reasonable to assume that Magellan may have turned around when he saw that his brother had just been shot and then could have been shot in the chest by the defendant. Your Honors, if there are any further questions. If not, we would ask that based on our brief and the argument presented today, that this court affirm the trial court's second stage dismissal. Thank you, Counsel. Thank you. Rebuttal, please. May I please report, I have three very brief points on rebuttal. The first two with respect to the second issue regarding witnesses. The first is there is a discussion as to whether the trial court has the discretion to deny, what it did in this case, deny a number of the affidavits, but specifically Willenica Wheaton. What 5-122-5 actually says is that the court should allow amendments as shall be appropriate, just and reasonable, and as generally provided in civil cases. And the civil case, the civil statute, which we discuss at length in both the opening and reply briefs, indicates that a court shall not deny an amended pleading if it relates back to the original pleading. Here, not even the state contests that Willenica Wheaton's affidavit, of course, relates back to the original pleading because it simply is a clarification as to the dates she discusses. So you're contesting that the trial judge abuses discretion when it struck those? Very much so, Your Honor. Okay. The second point is that to the state's contention that it was clearly trial strategy not to call these witnesses. We would simply point out that with three of the witnesses, it could not have been trial strategy because the affidavits indicate that he neglected altogether to talk to them about what they had to say. That's not trial strategy, and there's no cases that the state has to suggest that that is strategy. And third, Your Honor, one more quote from People v. Hernandez. It says, a prior relationship falls within the category of per se conflicts, and thus we need not inquire into the specific facts and nature and extent of the representation to determine whether the per se rule applies. And I believe that governs whether this Court should order an evidentiary hearing. You know, if we're to take literally that statement, then the trial judge, I mean, the Illinois Supreme Court might have followed that sentence with, and there was no reason for an evidentiary hearing in this case in Hernandez. It could have said that, but it certainly didn't need to. I doubt that it would have ever said that. And, Your Honor, I think this Court is required to take literally the holdings of the Illinois Supreme Court. Thank you. Thank you, counsel. This matter will be taken under advisement. This court is adjourned.